383 So.2d 1356 (1980)
LOUISIANA RESOURCES COMPANY, Plaintiff and Appellant,
v.
Wally LANGLINAIS et al., Defendants and Appellees.
No. 7578.
Court of Appeal of Louisiana, Third Circuit.
April 9, 1980.
Rehearing Denied May 29, 1980.
*1357 Broadhurst, Brook, Miller & Reed, William Broadhurst, Lafayette, Cooper & Sonnier, Charles Sonnier, Abbeville, for plaintiff and appellant.
Preston N. Summers, Abbeville, for defendants and appellees.
Before CULPEPPER, DOMENGEAUX and FORET, JJ.
CULPEPPER, Judge.
This is an expropriation proceeding brought by Louisiana Resources Company *1358 to obtain a servitude for a 12-inch, high pressure gas pipeline across property owned by defendants, Wally Langlinais, John Calvin Langlinais and Delores Ann L. Primeaux. The trial judge's award is itemized as follows:

"1)Value of permanent servitude
 taken $ 6,800.00
 2)Value of temporary servitude
 taken 1,900.00
 3)Severance damages 31,500.00
 4)Agricultural damages 1,000.00
 __________
 TOTAL $41,200.00"

Plaintiff appealed, and defendants have answered the appeal.
The issues are whether the trial judge erred as to: (1) the highest and best use of the land, (2) the value of both the permanent and temporary servitudes, (3) the award for agricultural damages, (4) the award for severance damages, (5) the denial of attorney's fees, and (6) the denial of damages for mental anguish.
The subject property consists of approximately 200 acres located in the community of Cow Island, about 7½ miles south of Kaplan and about 10 miles southwest of Abbeville, in Vermilion Parish, Louisiana. The property is a high, level and well drained L-shaped tract, with the southern boundary having a frontage of 4,400 feet along the north side of Louisiana Highways 35 and 692.
Currently the property is under cultivation for rice and soybeans. Building improvements consist of defendant Wally Langlinais' residence and various outbuildings, which are located near the mid-point in the frontage along Highway 35. There are also eight rice storage bins situated in the extreme southeast corner of the property. Four irrigation canals and two shell roads traverse the property in various directions.
The permanent servitude taken is 30 feet wide and includes approximately 2.73 acres. Defendant has full use of the servitude area for agricultural activities, but no buildings may be placed on the servitude. The temporary servitude taken included 3.7 acres for additional workspace during construction of the pipeline, which began in November, 1978 and was completed in May, 1979.
Plaintiff called four experts to testify on his behalf: Mr. Allen J. Angers, MAI, a licensed real estate broker and consultant appraiser; Mr. Cordell Hebert, a licensed real estate broker; Dr. Thomas T. Maher, an agricultural engineer; and Dr. Charles C. Caine, a soil consultant.
Mr. Angers gave the opinion that the highest and best use of the property was the sale of highway frontage homesites and continued agricultural use of the interior land. Angers based his opinion on the great depth of the property and the lack of access to the rear portions. He also considered the fact that all of the property adjacent to the subject tract was in agricultural use. Angers valued defendant's property overall at $2,500 per acre and, considering the servitude to be worth 84% of the fee value, valued the 2.73 acre servitude at $5,712. He valued the 3.7 acres of temporary servitude on the basis of a 10% annual return, or $810. Angers found no severance damage to the remaining land, since, in his opinion, the servitude would not harm what he considered to be the highest and best use of the remainder.
Plaintiff's second expert, Mr. Hebert, concurred in the opinion that the highest and best use of the property was utilization of the frontage for homesites and the rear for agriculture. Mr. Hebert based his opinion on the size of the tract and his experience in the area, which led him to believe that, while there was a demand for rural homesites, there is no market for an entire subdivision. Hebert assigned $2,250 per acre as the value of the property further than 500 feet from the highway and found that the servitude was worth 92% of the fee value, or $5,576. As to the temporary servitude, Hebert allowed a 10% return on a rental basis. Hebert also found no severance damage, concluding that the servitude would have no effect on the highest and best use of the remainder.
*1359 Dr. Thomas Maher testified for plaintiff as to the condition of defendant's property before and after construction of the pipeline. He viewed the property four times and gave the opinion that releveling would be necessary over a maximum of 15 acres. He found the area disturbed was so small that releveling could be done by the dry land leveling method rather than by the water leveling method. He estimated the cost of releveling at $475.
Plaintiff's fourth expert, Dr. Charles C. Caine, visited the defendant's property both during and after construction of the pipeline to investigate soil damage and/or displacement. He considered that any crop damage defendant might suffer would result from a disturbance in the physical condition of the land and not the fertility level of the soil. Dr. Caine testified that he believed defendant's total crop loss for 1979 would be approximately $1,000.
Defendant called three experts to testify in his behalf: Mr. Cecil B. Gremillion and Mr. Preston J. Babineaux, both of whom are licensed real estate brokers and certified appraisers, and Mr. Donald Landry, a soil conservationist.
Mr. Gremillion gave the opinion that the highest and best use of the entire tract was for rural homesites, with an alternate use for industrial purposes. Mr. Gremillion showed a particular expertise in the development of large, unimproved tracts for residential purposes and based his opinion primarily on his experience in the local market. His testimony included the results of governmental traffic surveys showing the rate of traffic passing directly in front of the subject property. Mr. Gremillion considered the traffic studies indicative of broad commercial possibilities. Based on his experience in the local area, Gremillion believed that the demand for rural homesites exceeded the supply, particularly as few farmers in the area wanted to sell their land. Mr. Gremillion valued defendant's property on a per lot basis and, after calculating that 2.73 acres at $2,500 would be equal to five lots at $4,375, estimated the area taken in permanent servitude had a market value of $11,943. He estimated that the 3.7 acres taken in temporary servitude should be given a 10% annual return over two years, or $3,280.
Preston J. Babineaux gave the opinion the highest and best use for the front portion of the tract was definitely for rural homesites and that the rear portion was "between rural homesites and rural land," being too valuable for agricultural purposes and a little too large for immediate development. Babineaux also had experience in subdivision development and was actively working on financing for a 260-acre tract in Vermilion Parish. Babineaux cited the location of the property and the road, school and work factors as evidence of the potential demand for homesite development. He described the real estate market in Vermilion Parish as active but stated that there was a scarcity of available land. Babineaux valued the defendant's property at $2,500 per acre and estimated that the permanent servitude had a 90% market value or $6,017. As for the temporary servitude, Babineaux valued the 3.7 acres at 10% over two years, or $1,900.
Defendant's third expert, Mr. Donald Landry, testified on the issue of damages to the land. The witness had been on defendant's property many times prior to the pipeline construction but had not personally inspected the alleged damage. Mr. Landry testified he was familiar with the type of trench that had been dug and was able to calculate how much clay had been distributed over the top soil. Based on information provided by defendant, Mr. Landry concluded that it would cost $20,000 over a two year period to relevel the land and restore soil fertility.
HIGHEST AND BEST USE
The pivotal issue in this case is the determination of the highest and best use of the subject property. The trial judge apparently found the highest and best use for the entire tract was for rural homesites. We *1360 say this because the judgment rendered was in accordance with figures advanced by defendant's expert, P. J. Babineaux, who proposed this use.
Plaintiff contends the trial court erred in relying on Mr. Babineaux. First, plaintiff strenuously argues that Mr. Babineaux's opinion should be disregarded because he allegedly did not base his opinion upon comparable transactions.
The record shows that Mr. Babineaux did include within his report a listing of comparable sales similar to those offered by plaintiff's expert. This report was introduced into evidence and plaintiff had ample opportunity to examine the witness on the sales listed. We have compared the sales listed by Mr. Babineaux with those offered by plaintiff's witnesses and find them equally valid for the purpose submitted. Therefore, we find no reason to disregard the witness' opinion.
Plaintiff also contends the trial court erred in accepting the use proposed by Babineaux because there is no reasonable expectation that the defendant's property would be used as homesites in the near future. Plaintiff relies on the case of Plaquemines Parish School Board v. Miller, 222 La. 584, 63 So.2d 6 (1953), where the court stated:
"Whilst the fact that a piece of property may, at some time, become available for residential subdivision purposes, can be taken into consideration in fixing its market value in expropriation proceedings, it should be made to appear that there is some reasonable expectation that it might be so developed in the not too far distant future. It will not do for the owner to say that at some indefinite time it is foreseeable that this property, because it adjoins a growing town, will have an added value as a subdivision project. A situation like that presents only a possibility of such use, and in Louisiana Highway Commission v. Guidry, 176 La. 389, 146 So. 1, it is stated that the `possibility' that land to be expropriated might sometime be sought for a particular purpose, was too remote to be considered as an element in determining its value. Here there is no suggestion coming from the defendant that he has ever contemplated dividing any of his property into building lots and spending the money involved in such an enterprise and for the court to arrive at a value on that basis it would be necessary to indulge largely in speculation which, of course, it cannot and will not do." (Emphasis supplied)
This court has considered the question of potential use in the case of State, Department of Highways v. Jenkins, 207 So.2d 380 (3rd Cir. 1968). We stated as follows:
"We are in accord with the language of the Supreme Court in the case of State of Louisiana, Through Department of Highways v. Rapier, 246 La. 150, 164 So.2d 280, 282 (1964) which reads as follows:
"The Court of Appeal correctly recognized that in an expropriation suit of this nature the proper measure of compensation is the market value of the thing taken, i. e., the price for which the property could be sold by a willing and informed seller to a willing and informed buyer in the condition in which it stood, as well as under the usual circumstances existing, at the time of the expropriation. Further, as it said, market value means the worth of the land considered in the light of its best and highest use, this being the most favorable employment to which the property is adaptable and may reasonably be put in the not too distant future. In this connection the Court of Appeal aptly stated: `* * * Potential residential subdivision or industrial use, to serve as the basis of establishing market value in an expropriation proceeding must be shown to be reasonably prospective, as distinguished from remotely prospective, to remove such potential use of classification from the realm of guesswork, speculation and conjecture. If *1361 such potential future use is shown within the reasonably near future, the owner is entitled to compensation on the basis of such use notwithstanding the property is not being utilized for such use at the time of taking. * * *' (Emphasis ours)"
In the instant case, all experts testified there is a present demand for homesites in the area. All of defendant's property is high, level and well drained. Considering these factors, the existing state highway and nearby industrial sites, we find the potential use as accepted by the trial court to be reasonably prospective to the extent that such use is removed from the realm of guesswork, speculation and conjecture.
VALUATION OF SERVITUDES
Plaintiff argues that the trial judge erred in valuing the permanent servitude at $6,800 without considering the defendant's residual rights to use of the land. We agree. Absent some extraordinary circumstance, we do not believe the value of the servitude taken is the same as the full market value of the land. Texas Gas Transmission Corporation v. Broussard, 196 So.2d 620 (3rd Cir. 1967).
Defendant's expert, Babineaux, and plaintiff's expert, Angers, both submitted $6,800 as the market value of the servitude area before expropriation. Neither, however, considered the value of the servitude to be the same as the full market value of the land. Babineaux estimated the land had a remainder value of 10% for the limited surface rights, or $680. Angers concluded the area would continue to enjoy a minimum remaining value of at least $400 per acre, or $1,088. Plaintiff's other witness, Cordell Hebert, valued the area within the permanent servitude at $6,120 with a remainder value of $200 per acre.
In keeping with the apparent intent of the trial judge, we will amend this award according to Mr. Babineaux's estimation of $680 and reduce the $6,800 to $6,120.
Plaintiff also argues that the trial judge erred in his valuation of the temporary servitude. Again, we agree.
The trial judge awarded $1,900, as per Mr. Babineaux's estimation. An examination of his appraisal report, however, shows he based his calculations on the assumption that the temporary servitude would have a two-year duration. He computed the amount as follows:
3.75 acres × $2,500 (per acre) = $9,375 × 10% × 2 years = $1,875
We have no difficulty in accepting 10% of the acreage value for use of the property, but nothing in the record supports an award for two years. The record indicates that plaintiff was granted a right of entry in the November, 1978 judgment and that all work was completed by mid-May, 1979.
We believe a fair award for the temporary servitude would be 10% of the acreage value for one year, or $937.
SEVERANCE DAMAGES
The third issue presented is whether defendants have carried their burden of proving the severance damages awarded. This award was based on the testimony of defendants' experts that an area of 250 feet on either side of the permanent servitude will suffer a 30% diminution in value attributable to the existence of the high pressure gas pipeline. According to experts Babineaux and Gremillion, there is substantial buyer resistance to residential properties near a pipeline servitude, due to a fear of explosions.
Plaintiff's experts disagreed. Mr. Hebert submitted an analysis of comparable sales which showed little or no difference in the purchase of certain subdivision lots where a similar servitude existed. While we are impressed with Mr. Hebert's study of this one subdivision, we cannot say his testimony substantially undermined the persuasiveness of defendant's experts. It has been recognized in a number of cases that the construction of a high pressure gas pipeline across a tract of land may have the effect *1362 of diminishing the market value of that portion of the remaining property which lies in close proximity to that pipeline, because of the dangerous potentialities of such line and the fear which prospective purchasers may have of such danger. United Gas Pipe Line Co. v. New Orleans Term. Co., 156 So.2d 297 (La.App. 4th Cir. 1963); United Gas Pipe Line Co. v. Nezat, 136 So.2d 76 (La.App. 3d Cir. 1961); Texas Pipe Line Company v. Langlinais, 168 So.2d 377 (La.App. 3d Cir. 1964); Colonial Pipeline Co. v. Babineaux, 154 So.2d 594 (3rd Cir. 1963); Texas Gas Transmission Corp. v. Young, 198 So.2d 453 (3rd Cir. 1967).
We find no manifest error in the trial court's award of severance damages of 30% of the value of strips of property 250 feet wide on each side of the servitude taken.
ATTORNEY'S FEES
In answering this appeal, defendant argues that the trial court erred in not awarding reasonable attorney's fees to the defendant under LSA-R.S. 19:8, which provides in part:
"If the highest amount offered is less than the compensation awarded, the court may award reasonable attorney fees."
We reiterate our position on this matter, as stated in Louisiana Intrastate Gas Corporation v. Guidry, 357 So.2d 830 (3rd Cir. 1978):
"Without discussing the matter any further, we note that the statute says that the court may award reasonable attorney fees. The question therefore, of whether or not to award attorney fees, is discretionary with the court, and we cannot say that the trial court abused its discretion in not awarding attorney's fees."
AGRICULTURAL DAMAGES
In addition to the expropriation award, defendant made a claim for property damages including loss of fertility of the soil and impairment of the level of the entire tract. The trial court awarded "agricultural damages" in the amount of $1,000. This award is consistent with the estimate by plaintiff's soil expert, Mr. Donald Caine, for the total crop loss for 1979.
Defendant complains that the award is inadequate in light of the testimony of his own expert, Mr. Donald Landry. While we do not doubt Mr. Landry's ability, we note that he never made an inspection of the property after the alleged damages occurred. We cannot say the trial court manifestly erred in rejecting Mr. Landry's significantly higher estimate of the cost to restore defendant's property to its former condition.
We do find the award inadequate, however, in light of testimony of plaintiff's other expert, Dr. Thomas F. Maher. After several on-site inspections, Dr. Maher determined that some 15 acres required releveling, which would cost $475. We believe that defendant is entitled to this additional amount.
DAMAGES FOR MENTAL ANGUISH
Defendants also made a claim for mental anguish arising from fear of the pipeline. This claim was denied on a motion for directed verdict immediately after trial. We affirm the trial court ruling.
The only witness to testify on this issue was Mrs. Langlanais. From her testimony, it is clear that the claim related solely to mental anguish suffered by her. However, Mrs. Langlanais was not a party to this suit and cannot recover an award in the judgment.
DECREE
For the reasons assigned, the judgment appealed is amended to reduce the award from $41,200 to the sum of $40,032.00. Otherwise the judgment is affirmed at plaintiff's costs.
AFFIRMED, AS AMENDED.