499 So.2d 1016 (1986)
LOUISIANA RESOURCES COMPANY, Plaintiff-Appellant,
v.
Olton NOEL, et ux., Defendants-Appellees.
No. 85-955.
Court of Appeal of Louisiana, Third Circuit.
October 8, 1986.
*1017 Michael R. Mangham and Elizabeth Jane Hastines, Lafayette, Charles Sonnier, Abbeville, for plaintiff-appellant.
Silas B. Cooper, Jr., Abbeville, for defendants-appellees.
Before DOMENGEAUX, GUIDRY and YELVERTON, JJ.
YELVERTON, Judge.
Louisiana Resources Company (LRC), plaintiff in these two consolidated expropriation suits, appeals complaining of the amounts awarded the defendant-landowners as just compensation and attorney's fees. The defendant-landowners, Lawrence and Olton Noel and their wives, answered the appeal. For the reasons set forth below, we amend the judgments of the trial court to reduce the award of just compensation and attorney's fees. A separate judgment is being rendered this date in the consolidated case, Louisiana Resources Co. v. Lawrence Noel, 499 So.2d 1024 (La.App. 3rd Cir.1986).
The current proceedings stem from LRC's acquisition of a natural gas pipeline right-of-way across tracts of private property in Vermilion Parish, Louisiana. This case concerns the right-of-way acquired across two 113 acre tracts of land; the first owned by Olton Noel and his wife and the second owned by Lawrence Noel and his wife. On January 6, 1983, the parties entered into a consent judgment entitling LRC to expropriate the rights-of-way. Thus, the only questions litigated were those of just compensation for the right-of-way and past or future damages.
At the time of trial on the merits the plaintiff had already finished the construction of the pipeline across the Noels' property. Both properties are located outside the corporate limits of Abbeville and were being used for raising cattle at the time of *1018 expropriation. Both properties were bisected by a previously-existing pipeline servitude running east-west. The present pipeline constructed by plaintiff lies parallel and adjacent to the existing pipeline. The rights-of-way acquired by plaintiff consist of a 30-foot permanent right-of-way and a 60-foot temporary right-of-way for the installation of the pipeline. The permanent right-of-way across Lawrence Noel's tract covered 1.65 acres, while the temporary right-of-way covered 3.44 acres. The permanent right-of-way across Olton Noel's property covered 1.35 acres and the temporary right-of-way 2.69 acres. Both properties were well-drained, flat, and cleared. The Lawrence Noel tract fronted a parish road for 2520 feet, while the Olton Noel tract fronted a parish road on the north by 1951 feet and another road on the south by the same distance.
At trial, the plaintiff's experts presented testimony that the highest and best use of the two tracts was agriculture and that the expropriation resulted in no severance damages. The defendants' expert testified that the highest and best use was for rural homesites and that severance damage had been suffered. The jury, evidently accepting the testimony of the defendants' expert, awarded the defendant-landowners compensation for the permanent and temporary rights-of-way, severance damages, and damages due to construction. The trial court, finding additional errors in the jury verdicts, granted an additur in favor of Lawrence Noel and a remittitur against Olton Noel.
Lawrence Noel and his wife were awarded $47,755.61 in damages and compensation and $11,000 in attorney's fees. The award included:
1) $9,960 for the permanent right-of-way;
2) $3,006 for the temporary right-of-way;
3) $24,840 in severance damages;
4) $6,289.50 in contested special damages; and
5) $3,660.11 in stipulated damages.
Olton Noel and his wife were awarded $38,748.40 in damages and compensation and $9,000 in attorney's fees. That award included:
1) $8,100 for the permanent right-of-way;
2) $2,430 for the temporary right-of-way;
3) $20,187 in severance damages;
4) $5,772.56 in contested special damages; and
5) $2,258.84 in stipulated damages.
The plaintiff argues that the trial court erred in the following findings:
1) The determination that the highest and best use of the two properties was for rural residential purposes;
2) The award of severance damages;
3) The award of certain special damages;
4) The failure to grant LRC's exception of prematurity as to the defendants' claim for certain damages; and
5) The award of attorney's fees.
The plaintiff also raised other issues on appeal arguing that the trial court erred in failing to declare a mistrial or to admonish the jury after opposing counsel's alleged inflammatory and prejudicial closing argument, and that the trial court erred in allowing inadmissible evidence to be presented to the jury. We have reviewed these latter assignments of error and have determined that any error was harmless and not determinative of the outcome of this case. Therefore, we will address only the first five of plaintiff's assignments.

PLAINTIFF'S APPEAL

VALUE OF THE PROPERTY
The amount of damages owed to the defendant-landowners depends upon the highest and best use of the property. The jury accepted the testimony of the owners' expert and evidently determined the highest and best use of both entire tracts was residential or rural homesite development. That determination was clearly wrong.
*1019 Highest and best use is the most favorable employment to which the property is adaptable and may reasonably be put in the not too distant future. See Faustina Pipe Line Co. v. Bernard, 458 So.2d 981 (La.App. 3rd Cir.1984). If potential future use of the property is shown to be within the reasonably near future, then the landowners are entitled to compensation on the basis of such use even though the property is not being so utilized at the time of taking. State Dept. of Highways v. Rapier, 246 La. 150, 164 So.2d 280 (1964). Market demand is an important factor in determining potential use. Louisiana Resources Co. v. Langlinais, 383 So.2d 1356 (La.App. 3rd Cir.1980), and Faustina Pipe Line Co. v. Bernard, supra. Other important factors include economic development in the area, specific plans of businesses and individuals, including action already taken to develop the land for that use, and the use to which the property is being put at the time of the taking. See Southwestern Electric Power Co. v. Scurlock, 485 So.2d 72 (La.App. 2nd Cir.1986), and Town of Rayville v. Thomason, 404 So.2d 1290 (La. App. 2nd Cir.1981).
In the present case the two tracts had been used for agriculture for many years before the taking. The record is clear that the landowners had no intention to develop or sell the property as rural homesites or residential lots.
The owners' expert testified it was his opinion that the highest and best use of all the property was for rural homesites. His opinion was influenced by the amount of frontage on highways, as well as the availability of natural gas, electricity and nearby schools. He considered comparables of one to two acre lots in determining that the value of the property was $6,000 an acre. Due to the size of the tracts in question and the depth of the property he felt these tracts should be divided into six acre lots. He also opined that the permanent right-of-way would cause a 100 percent loss of the property taken.
This same expert testified that there was a market for rural homesites in the area. However, he offered little evidence to support the opinion that there was a ready market. Other testimony revealed that there was an abundant supply of property already on the market which was available for homesites. Although he used sales in a nearby rural subdivision that he owned not only as comparables but also as proof of market demand, he admitted that there were still two or three hundred lots for sale in that subdivision and that market conditions were depressed. He cited the presence in the area of a mobile home park, with 39 or 40 spaces in it, which he said was fully occupied up until 1983, and reasoned from this that there was a necessity for homesites in the area. He said, "People wouldn't have gone in that park ... had they had the rural homesites to go to."
This expert's understanding and use of comparables was somewhat unorthodox. Explaining his use of comparables generally  his comparables consisted entirely of his own sales as a real estate broker in recognized subdivisions  and specifically his use of a .6 of an acre sale in a subdivision as a guiding comparable to his evaluation of the subject property, this expert stated:
"I think it's similar in this respect that immediately upon looking at the Noel tract on the back side of the property  I had never, I never was real familiar with the back side of the property until I had driven there  but immediately upon looking at the tract of land I found that the highest and best use of that tract of land was rural homesites. And I made my opinion of that without, without having to go to the courthouse, so in, in getting comparables, in getting comparable sales naturally I want to get comparable sales of homesites to, to further strengthen my position that the highest and best use of the property is rural homesites."
The witness perhaps did not have a clear understanding of what is meant by highest and best use. Highest and best use does not mean the highest price that could possibly be obtained for a piece of property. Apparently guided by the assumption that *1020 best use does mean highest price, he testified as follows:
"Now, the highest and best use of this property is elementary, it's  it's easy, because I look at the property  the first homesite that was built on that property was built in 1905 as a homesite for the old family, inherited and their children and their children's children have that property. So, if it was good for a homesite in 1905 it's good for a homesite today. And as a, consequently I, it was no problem for me to know, not to think, not to guess, not to ask anybody, not to come and ask the Clerk of Court to look it up in their records. I knew that the highest and best use is  like Mr. Hebert would say is homesites and that, that was my opinion."
The witness's approach to determining severance damages was likewise a bare assertion, unsupported by any objective factors. The witness stated that he always found severance damages when appraising pipeline property. His method of calculation of severance was to apply a rule that property extending 250 feet on either side of a pipeline right-of-way will be damaged to the extent of 30 percent of its value, but where there are two pipelines, the damage is only 15 percent. He used this formula for evaluating severance damages not only in this case, but in every case in which he had ever been involved.
One of plaintiff's experts, Gene Cope, testified that the land's highest and best use was for agriculture since the land had been used for agriculture in the past and was being so used at the present. Mr. Cope considered that the area was sparsely populated and that there were no active subdivisions there. He testified that the general area was going to remain agricultural and that there was no likelihood of change in the foreseeable future. He estimated the value of the property to be $5,000 an acre and opined that the permanent right-of-way would cause an 80 percent loss of the property taken.
The plaintiff's other expert, Cordell Hebert, testified that due to the size of the tracts, the highest and best use would be mainly agricultural with limited rural residential sales along the frontage. The right-of-way taken was from the area Mr. Hebert considered would be continued to be used for agriculture. He estimated the value of the property taken to be $5,000 an acre and that the permanent right-of-way would cause an 80 percent loss of the property taken. He felt no severance damage had occurred as a result of the expropriation.
It is apparent from the testimony of the landowners' expert that his determination of the highest and best use of the property taken was based upon the ultimate possible use of the property rather than upon its reasonable use in the "not too distant future." The record clearly establishes that there was not such a demand for rural homesites as would create a market for the sale of homesites divided from two 113 acre tracts, and that there was already property on the market sufficient to meet the demand. Therefore, we find that the jury was clearly wrong in determining the highest and best use of the land to be residential. We determine the highest and the best use of the land taken to be agricultural and the value of the land to be $5,000 an acre.
Based on these considerations Olton Noel and his wife should be awarded the amount of $5,400 (1.35 acres × $5,000 × .80) for the property taken, subject to a permanent right-of-way. We find Lawrence Noel should be awarded the amount of $6,640 (1.66 acres × $5,000 × .80).
We also find it necessary to reduce the awards for the temporary rights-of-way. Using the same formula used at trial, we find Olton Noel should be awarded $2,017.50 (2.69 acres × $5,000 × .15 × one year). Lawrence Noel should be awarded $2,580 (3.44 acres × $5,000 × .15 × one year).

SEVERANCE DAMAGES
Both of the plaintiff's experts testified that the existence of the pipeline right-of-way across defendants' tracts of land *1021 would not result in severance damage. These opinions were based on the determination that the highest and best use of the land taken and that land adjacent to the right-of-way would be agricultural. The landowners' expert testified that the expropriation would result in severance damage; his opinion was based on the erroneous conclusion that the property taken and the adjacent property's highest and best use was residential. Since we have concluded that the expropriated property's highest and best use is agricultural, we find, based on the evidence in the record, that there was no basis for an award of severance damages.

THE AWARD OF SPECIAL DAMAGES
Plaintiff complains of error in the jury award of $320 in favor of Olton Noel and his wife for damages resulting from Noel having to pull out a tractor twice and for "checking on the pipeline", and in the jury award of $300 in favor of Lawrence Noel and his wife for "making drains and inspection of the pipeline."
Olton Noel testified that his tractor became stuck twice due to the condition of his land caused by the construction of the pipeline. He also said that he spent three to four hours checking on the plaintiff's construction.
Lawrence Noel testified that he spent nine hours making drains necessitated by the damage caused by plaintiff in the pipeline construction. He further stated that he spent one hour inspecting the pipeline.
Plaintiff argues that the time spent by defendants in inspecting the pipeline is not compensable, since these losses would be considered subjective losses.
A landowner in an expropriation suit is not entitled to subjective losses. State of Louisiana, Dept. of Highways v. Johnson, 369 So.2d 191 (La.App. 3rd Cir. 1979). The jury award for the inspection of the pipeline by defendants is a subjective type of loss similar to inconvenience, worry, and anxiety. The provisions of La. Const. Art. 1, Section 4, do not authorize an award for that item.
However, the defendants did prove that the construction of the pipeline resulted in Olton's tractor becoming bogged down twice and in Lawrence having to make drains. Such damages are compensable. Since the awards combined compensable with noncompensable damages this court will make an appropriate reduction. Lawrence Noel testified that he spent about one hour inspecting the pipeline and about nine hours in making drains. Under these circumstances a 10% reduction in that award is appropriate.
Olton Noel testified that he spent three to four hours checking on the construction project and that his tractor got stuck twice. A reduction of his award in the amount of $100 is appropriate. Accordingly, the jury's award in favor of Olton Noel of $320 shall be reduced to $220, and the $300 award to Lawrence Noel shall be reduced to $270.

EXCEPTION OF PREMATURITY
LRC filed an exception of prematurity countering defendants' allegations of damages incidental to the construction clean-up of the rights-of-way. LRC argues that the consent judgments dated January 6, 1983, allowed for the performance of additional work to remedy any unsatisfactory conditions on the right-of-way property up to one year after termination, and that its failure to remedy the damage complained of by defendants were initially due to bad weather and later by the action of the defendants themselves.
We do not find the defendants' allegations of damages premature. The record indicates that a representative of LRC told the defendants that LRC had completed the construction of the pipeline and the clean-up as best it could, and asked the Noels to sign a release on January 9, 1984. The release stated that the clean-up was good. The defendants were justified in believing that LRC had done all that it would do to remedy the damage caused by the construction.

*1022 ATTORNEY'S FEES
Plaintiff also argues that the trial court abused its discretion in its award of attorney's fees.
R.S. 19:8 gives the trial court discretion to grant attorney's fees in expropriation cases. Under the provisions of the statute, the trial court may award reasonable attorney's fees if the highest amount offered by plaintiff is less than the compensation awarded.
In the present case the trial court found that plaintiff tendered the sum of $10,719 to Olton Noel and his wife before suit and that plaintiff tendered the sum of $13,113 to Lawrence Noel and his wife before suit. The amounts offered were less than the compensation awarded.
The trial court, finding that reasonable attorney's fees were due in the present case, awarded Olton Noel and his wife $9,000 and Lawrence Noel and his wife $11,000. These awards were based to some extent on the jury's determination that severance damages had occurred and the fact that part of the trial dealt with the subject of severance damages. Since we have determined that the jury erred in its award of severance damage we shall reduce the award of attorney's fees by 20 percent.
Plaintiff further contends that if we award attorney's fees, then the amount awarded should be limited to no more than 25 percent of the difference between the expropriator's highest settlement offer and the compensation granted, and cites by analogy R.S. 48:453(E) (the expropriation law).
We decline to do so. The legislature has imposed a ceiling in one case, but not in the other. We follow the legislative will. R.S. 19:8 imposes no ceiling on the award of attorney's fees; rather, it authorizes the award of reasonable attorney's fees. See Faustina Pipe Line Co. v. Broussard, 450 So.2d 17 (La.App. 3rd Cir. 1984), writ denied 452 So.2d 172 (La.1984).

THE ANSWER TO THE APPEAL
The defendants answered the appeal raising the following issues:
1) Error in the trial court's refusal to allow the landowners to amend their answer to pray for legal interest;
2) The trial court's refusal to admit evidence and award damages for mental anguish;
3) Additional attorney's fees on appeal;
4) Error in not awarding the landowners the sums expended by their attorney in preparation for and during trial;
5) The trial court's refusal to allow the landowners the full payment of their expert witness fees; and
6) The remittitur of $10,530.

LEGAL INTEREST
The defendants contend that the trial court abused its discretion in refusing to allow them to amend their answers to pray for legal interest. The amendments were attempted after the jury verdict.
The facts surrounding the denial of the request to amend were explained by the trial court as follows:
"In each of the captioned cases the landowners seek permission to file amending pleadings to pray for legal interest. For reasons hereinafter stated, we deny the same.
"The usual procedure of requiring a trial to determine just compensation and the deposit thereof prior to the expropriating authority's right of entry on to the landowner's property was not followed.
"In each instance, counsel for the respective parties entered into an agreement which formed the basis for a consent judgment which, inter alia, gave the pipeline company the right to enter the properties and construct its pipeline, with the issue of just compensation and damages, if any, to be determined at a later date. These agreements and the consent judgments are silent as to legal interest.
"The plaintiff, in opposition to the motion, argues that these agreements were entered into at the request of counsel for the landowners who desired to delay trial *1023 on just compensation until after the construction of the pipeline so as to determine if its installation caused any damage to the properties and, if so, to have these damages adjudicated at the same time. Accordingly, these cases were tried long after the pipeline was installed.
"The motions seek legal interest from the date of these agreements. LRC states that had legal interest been made an issue at that time, it would not have agreed but would have tried the issue of just compensation prior to its entry on to the properties to avoid the added expense of legal interest."
The trial court has discretion to allow the amendment of an answer within ten days after the answer has been served. See C.C.P. art. 1151 and comments.
In their brief on appeal the landowners appear to be arguing that they have an absolute right to interest, and that for this reason it was an abuse of discretion for the trial court to have turned down their request for an amendment. We have held that interest in an expropriation case does not attach automatically. Shell Pipe Line Corp. v. Sarver, 442 So.2d 884 (La.App. 3rd Cir.1983), writ denied 446 So.2d 319 (La. 1984).
The trial court evidently determined that an amendment by the defendant-landowners at such a late date would be inequitable to the plaintiff. We find no abuse of discretion in the trial court's action denying the defendants' amendment.

MENTAL ANGUISH
The landowners also argue that the trial court erred when it sustained the plaintiff's exception of no cause of action and motion to strike, relative to mental anguish and aggravation. The landowners contend that they should have been permitted to offer evidence of nonpecuniary damages including mental anguish.
In the present case defendants allege that plaintiff violated provisions of the consent judgments which ordered plaintiff to maintain drainage, keep roads open, to come and go only on the right-of-way, and to properly backfill. The defendants claim these violations caused them anguish and distress. Defendants argue that the breach of the conditions of the consent judgments were willful and wanton on the part of the plaintiff and that the defendant-landowners should have been afforded the opportunity to prove damages for mental anguish. We disagree.
The trial court relied on Elliott v. Louisiana Intrastate Gas Corp., 390 So.2d 571 (La.App. 3rd Cir.1980). In Elliot, this court held that in order to be able to recover damages for mental anguish due to a breach of a contractual provision, the object of the contract must be the gratification of some intellectual enjoyment; otherwise such damages may not be awarded. In the present case the object of the consent judgments was not the gratification of some intellectual enjoyment. In any event, subjective losses are not compensable in expropriation suits. For these reasons we find the trial court did not err in its ruling.
In the landowners' supplemental brief they also contend that the trial court should have permitted them to present evidence as to trespass and the damages caused by the trespass, including mental anguish. However, after carefully reviewing the pleadings, we find that defendants' supplemental answers alleged only that plaintiff violated the consent judgment provisions and did not state a cause of action in trespass.

ADDITIONAL ATTORNEY'S FEES
Since we have previously discussed the issue of attorney's fees, it is unnecessary to discuss this issue further.
The defendants also argue that the trial court should have awarded the sums expended by their attorney in preparation and during the trial in addition to the attorney's fees awarded. The trial court was right. R.S. 19.8 allows only reasonable attorney's fees to be awarded. It does not allow an award for expenses.

EXPERT FEES
Defendants also seek an increase in its expert witness fee award alleging that the *1024 trial court should have allowed the full amount charged the landowners by the experts.
The fixing of expert witness fees is largely within the discretion of the trial court and the trial court's fixing thereof will not be disturbed on appeal in the absence of abuse of discretion. See State of Louisiana, Department of Transportation and Development v. Van Willet, 389 So.2d 1346 (La.App. 3rd Cir.1980). In the present case we have reviewed the record and find no abuse of discretion.
Appellant also argues that the trial court erred in requiring the landowners to remit $10,530 of the verdict. Since we have already determined the amount of compensation we find it unnecessary to discuss this issue.
For these reasons the judgment of the trial court is amended as follows: The judgment in favor of Olton Noel against Louisiana Resources Co. awarding compensation is reduced from $38,748.40 to $15,348.90 and the award of attorney's fees is reduced to $7,200. In all other respects the judgment of the trial court is affirmed, costs on appeal to be divided one-half to plaintiff and one-half to defendants.
AMENDED AND AFFIRMED.