509 So.2d 471 (1987)
STATE of Louisiana, DEPARTMENT OF TRANSPORTATION & DEVELOPMENT, Plaintiff-Appellant,
v.
Kenneth BOAGNI, Jr., et al., Defendants-Appellees.
No. 86-425.
Court of Appeal of Louisiana, Third Circuit.
April 8, 1987.
*472 Jo Fleming, Baton Rouge, for plaintiff-appellant.
Felix A. Dejean, Felix O. Pavy, of Thistlethwaite, Thistlethwaite and Pavy, Boagni, Genovese and Hebert, Donald Hebert, Opelousas, for defendants-appellees.
Before LABORDE, YELVERTON and CULPEPPER[*], JJ.
YELVERTON, Judge.
The State of Louisiana, through the Department of Transportation and Development (DOTD), the plaintiff in this expropriation suit, appeals complaining of the amounts awarded the thirteen defendant-landowners for just compensation and of the determination of severance damage to the remaining property. For the reasons set forth below, we amend the judgment of the trial court to reduce the award of just compensation, severance damages, and attorney's fees.
The trial court in its thorough and well-written reasons for judgment summarized the facts and testimony as follows:
"This is an expropriation case and involves the taking of approximately 10.892 acres from a larger tract for the construction of that portion of Interstate Highway-49 (I-49) just north of Washington, Louisiana. There are thirteen defendant landowners. The expropriating authority is the State of Louisiana, Department of Transportation and Development (DOTD). The DOTD deposited the sum of $10,700.00 as the fair market value for the full ownership of the property taken, subject to a mineral reservation as provided for [by] Article I, Section 4 of the Constitution and LSA-R.S. 48:441 et seq.
"The Defendant answered the petition and sought an increase to $54,460.00 for just compensation and $50,000.00 for severance damages because the parent tract had been severed into two smaller tracts. The DOTD denies there were any severage damages."

FACTS:
"The evidence established that the parent tract contained approximately 88 acres prior to the taking. It was an elongated tract that ran generally in a SE-SW direction. It was bounded on the NE by Jean Latiolais, Sr., on the SE by Lawrence Sandoz, Jr. et al; on the SW by Bayou Cocodrie; and on the SW by private landowners....
"Prior to and after the taking the defendants owned a servitude of passage across the Latiolais land on the NE. This was the only legal access that the owners had to get to their property. The taking severed the parent tract and left *473 14.692 acres on the NE side of I-49 and 62.416 acres on the SW side. The servitude of passage across the Latiolais land now provides access to the 14.692 acres, but the remaining 62.416 acres is isolated, and there is no servitude providing ingress to that acreage.
"I-49 is a `controlled access facility with no right of access to, from or across said facility to or from abutting lands except at the designated points at which access is permitted upon terms and conditions specified from time to time and upon the service, frontage or access provided...' [sic]
"In the 10.892 acres taken there is a recessed area which is part of the natural drainage across the subject tract. Initially the DOTD had intended to place large culverts in that area to provide for drainage, but later decided to build a bridge across the area. This change in construction plans was not communicated to the defendants until it was brought out in evidence at trial. At the request of the parties the Court visited the area where the bridge is being built, and it is obviously a drainage area, and water marks that were visible on area trees reflect seasonal high water of somewhere between six and eight feet."
The main issues presented at trial were 1) The determination of the highest and best use of the property for compensation purposes, and 2) The amount of severance damage, if any.
Four appraisers testified, two for DOTD and two for the landowners. All expert appraisers agreed that one of the best uses of the land would be timber, since over 90 percent of the tract was timberland at the time of the taking. However, the appraisers for the landowners also opined that the land could also be used for farming and agriculture. Based on the testimony of these experts and a local farmer the trial court found that the land was adaptable to agriculture at the time of the taking and that the property could be used for farming in the not too distant future, therefore he determined the highest and best use of the land was agricultural. The trial court also found that there had been a severance of the 62.416 acres from acess to a public road and that this acreage had suffered some severance damage.
Based on these findings the trial court concluded that the property was worth $925 an acre. He awarded the defendants $10,158.35 for the value of the land taken and $43,691.20 in severance damages.
The issues on appeal are 1) Whether the trial court erred in finding that the highest and best use of the land was agricultural, and 2) Whether he erred in concluding there was severance damages.
As this court stated in Louisiana Resources Co. v. Noel, 499 So.2d 1016 (La. App. 3rd Cir.1986), writ denied 501 So.2d 200 (La.1987):
"Highest and best use is the most favorable employment to which the property is adaptable and may reasonably be put in the not too distant future. See Faustina Pipe Line Co. v. Bernard, 458 So.2d 981 (La.App. 3rd Cir.1984). If potential future use of the property is shown to be within the reasonably near future, then the landowners are entitled to compensation on the basis of such use even though the property is not being so utilized at the time of taking. State Dept. of Highways v. Rapier, 246 La. 150, 164 So.2d 280 (1964). Market demand is an important factor in determining potential use. Louisiana Resources Co. v. Langlinais, 383 So.2d 1356 (La. App. 3rd Cir.1980), and Faustina Pipe Line Co. v. Bernard, supra. Other important factors include economic development in the area, specific plans of businesses and individuals, including action already taken to develop the land for that use, and the use to which the property is being put at the time of the taking. See Southwestern Electric Power Co. v. Scurlock, 485 So.2d 72 (La.App. 2nd Cir.1986), and Town of Rayville v. Thomason, 404 So.2d 1290 (La.App. 2nd Cir.1981)."
In determining what employment the property may have been put in in the not too distant future, the trial court stated:

*474 "... The second prong of the Rapier test (i.e., may be reasonably put to use in the not-too-distant-future) presents a much more difficult problem. The DOTD submitted that agricultural utilization was not a viable option in the not-too-far-future. Its witnesses testified as to the difficulty in securing a 404 Wetlands permit; the fact that the topography and soil type of the subject property was not well suited for farming; and the difficulty with drainage. While the defendants did not themselves testify as to their intent to convert the property into farm land, the evidence offered by them did establish that with a 404 permit the land could be cleared and drained and put into cultivation. In that context farming operations on the subject property could be `used for farming in the not too distant future.' Thus, the Court finds that the highest and best use of the subject property was agricultural in the immediate prospective future." (Emphasis ours.)
Merely offering evidence that property could be converted to another use is insufficient to establish potential future use necessary to entitle a landowner to compensation. The landowner must show that the property may reasonably be put to that use in the not too distant future by offering evidence as to the market demand for that use, as to specific plans of individuals to develop the land for that use, and as to the difficulty and economic feasibility in converting the land to another use. See Louisiana Resources v. Noel, supra.
In the present case the land was over 90 percent timberland. The land was being leased to a hunting club to be used for hunting. The club had leased the land since 1965 or 1966. No evidence was offered as to when the lease was to expire. No evidence was presented as to the market demand for farm land in the area at the time of the taking. No evidence was presented to show that the landowners were intending to convert the land to farm land or that anyone had offered to purchase the land for that purpose. Instead, evidence was offered that showed a former owner had talked to a local farmer in 1966 about clearing and farming the land. The farmer testified that at that time it was not economically feasible for him to clear and farm the land. Further testimony from witnesses also revealed that the property was difficult to drain and not well-suited to farmland. Under these facts we find that the highest and best use of the land was timberland.
The two DOTD appraisers opining that the highest and best use of the property was timberland and utilizing comparable sales on timber property appraised the property at $841 per acre and $837 per acre respectively, (both appraisals included the value of the standing timber). We conclude that the property has a value of $841 per acre. Therefore, the judgment is amended to award the landowners $9,235.86 ($841 X 10.982) for the land taken instead of the $10,158.35.
DOTD also argues that the trial court erred in finding severance damage to the 62.416 acres on the southwest side of the interstate.
As this court stated in State, through Department of Transportation v. Townsend, 473 So.2d 99 (La.App. 3rd Cir.1985), writ denied, 477 So.2d 712 (La.1985):
"The next issue to be addressed is the trial court's award of severance damages. An owner is entitled to severance damages to the remaining property when only part is taken and damage results thereby to the remainder. This measure of compensation is the diminution in the value of the remaining property for sale or rental, determined by arriving at the value immediately before and after the expropriation. State, Dept. of Transp. and Develop. v. Taylor, 461 So.2d 1282 (La.App. 3rd Cir.1985), writ denied 464 So.2d 1382 (La.1985). Severance damages must be shown to a reasonable certainty and must not be too remote or speculative for the mere possibility of severance damages is an insufficient basis for an award. City of Alexandria v. Jones, 236 La. 612, 108 So.2d 528 (1959). But on the other hand, the trial court's factual findings as to severance damages *475 in an expropriation proceeding and the weight given to the testimony of expert witnesses as the basis of this factual conclusion will not be disturbed on review absent a showing of manifest error. State, Through Dept. of Highways v. Wilson, 372 So.2d 632 (La.App. 1st Cir. 1979); Arceneaux v. Domingue, 365 So.2d 1330 (La.1978)."
In the present case 10.892 acres were expropriated from a parent tract of 88 acres. I-49 traversed and severed the parent tract leaving 14.692 acres on the northeast side and 62.416 acres on the southwest side. Prior to the taking the defendants were owners of a servitude of passage from the public road across the Latiolais property to the northeast. This servitude still provides access to the 14.692 acres; however, the trial court found that it no longer provides access to the remaining 62.419 acres. Since the trial court found no other legal access from the road to the property and that the property was virtually inaccessible, he agreed with the landowners appraisers that severance damage had occurred to the 62.419 acres.
The record supports these findings of fact. Aubrey and Bobby Soileau, two residents of the area, testified that they were familiar with the property and that the 62 acre tract is no longer accessible by vehicle due to the construction of the Interstate Highway. DOTD argued that the landowners still had access to the property by virtue of three routes. However, two of the routes were across private property without a servitude of passage and the third was underneath the Interstate. The trial judge visited the area where the bridge was being built and determined it to be a drainage area with high water marks somewhere between six and eight feet and not suitable for access. We cannot say that the trial court was clearly wrong in concluding the property was no longer accessible by vehicle.
The defendants' appraisers testified that the 62.416 acre tract had diminished in value due to its isolation, and the trial court agreed. One appraiser allotted a residual value of $225 per acre. We find no error in this determination.
Since we have determined the average value per acre of their property is $841 per acre we need to amend the trial court's award of severance damages since it was based on $700 ($925 minus the residual value of $225) an acre. The judgment is amended to award the defendant-landowners ($841-$225 × 62.416 acres) $38,448.26.
Since we have reduced the total award of compensation the amount of attorney's fees will also be reduced to 25 percent of the total award above the amount deposited by DOTD with the court.
For these reasons the judgment of the trial court is amended as follows: The judgment in favor of Kenneth Boagni, Jr., et al, and against the plaintiff, State of Louisiana, Department of Transportation and Development, awarding compensation is reduced from $10,158.35 to $9,235.86; the award of severance damages is reduced from $43,691.20 to $38,448.26, and the award of $10,787.39 in attorney's fees is reduced to $9,246.03. In all other respects the judgment of the trial court is affirmed, costs on appeal to be divided one-half to plaintiff and one-half to defendants.
AMENDED, AND AS AMENDED, AFFIRMED.
NOTES
[*] Judge William A. Culpepper, Retired, Judge Ad Hoc.