541 So.2d 291 (1989)
STATE of Louisiana, DEPARTMENT OF TRANSPORTATION AND DEVELOPMENT, Plaintiff-Appellee,
v.
John J. FAKOURI, Jr., et al., Defendants-Appellants.
No. 87-1365.
Court of Appeal of Louisiana, Third Circuit.
March 15, 1989.
Rehearing Denied April 12, 1989.
Writ Denied June 2, 1989.
*292 Wm. W. Irwin, Jr., Edward A. Michel, Jr., Baton Rouge, Fournet & Adams, Robert J. Adams, Lafayette, for plaintiff-appellee.
Edwards, Stefanski & Barousse, Homer E. Barousse/Stephen A. Stefanski, Crowley, for defendants-appellants.
Before GUIDRY, LABORDE and KING, JJ.
KING, Judge.
The issues presented in this appeal are whether or not the trial court was correct in rejecting defendants' demand for additional damages resulting from the expropriation of their property and whether or not the trial court was correct in fixing the amount of expert witness fees for defendants' appraisers.
The State of Louisiana, Department of Transportation and Development (hereinafter plaintiff) filed suit to expropriate certain land owned by John Fakouri, Jr. and others (hereinafter defendants) alleging just compensation for the land sought to be taken was $594.00 per acre or a total of $47,034.00. Defendants answered the petition denying plaintiff's estimate of just compensation and sought $1,000,000.00 for their property. Defendants later amended their pleading to demand $4,000,000.00. After trial the trial court rendered judgment in favor of defendants and against plaintiff awarding the sum of $28,187.95. This amount represented the difference between the original valuation made by plaintiff and the value of $950.00 per acre determined by the trial court. The court also awarded defendants $7,046.75 in attorney's fees and awarded witness fees for defendants' experts of $14,600.00. Defendants timely devolutively appealed. Plaintiff answered the appeal. We affirm.

FACTS
On July 21, 1981, plaintiff filed suit and expropriated, pursuant to LSA-R.S. 48:441, *293 et seq, the Quick Taking Statute, in full ownership a 79.81 acre tract of land near Washington, Louisiana belonging to various members of the Fakouri family. The property was expropriated for use as a lake, camping and scenic area and rest stop in the State's I-49 highway project on the North-South Thruway connecting I-20 at Shreveport to I-10 at Lafayette.
There was a difference of opinion between the parties as to the classification of the property for purpose of appraisal and valuation. The plaintiff categorized the property as timberland, while the defendants considered it as a sand deposit reserve. The trial court noted in its written reasons that "... the highest and best use to which the property was adaptable at the time of the taking and in the not-too-far distant future as of that time was farming." The court reached this conclusion after considering the testimony of the various experts. As the entirety of the land owned by the defendants was taken the question of severance damages is not involved as this is a total taking. The first question to be decided by this court on appeal is whether or not the trial court was correct in fixing the value of the land taken by the State as of the date of taking, which was July 21, 1981.

LAW
It is well settled that an appellate court should not disturb the factual finding of a trial court in the absence of manifest error. Manifest error, in its simplest terms, means "clearly wrong." Arceneaux v. Domingue, 365 So.2d 1330 (La.1978); Canter v. Koehring Company, 283 So.2d 716 (La.1973). In a trial of an expropriation suit in which experts disagree as to the highest and best use and the value of land taken, the trial court is granted much discretion in evaluating and determining the weight to be given to each expert witness. The trial court's findings of fact will not be disturbed on appeal unless these findings are clearly erroneous. State, Etc. v. Estate of Aertker, 404 So.2d 316 (La.App. 3 Cir.1981).
This is an expropriation case in which defendants claim that their property is worth much more than the trial court allowed. In determining the value of the defendants' property which was expropriated this court must first assess whether the trial court was correct in finding that the highest and best use for the property was for farming.
LSA-R.S. 48:453(A) provides that:
"The measure of compensation for the property expropriated is determined as of the time the estimated compensation was deposited into the registry of the court, without considering any change in value caused by the proposed improvement for which the property is taken."
This statute has been consistently followed by the courts of our state. See, e.g. State, Dept. of Highways v. Bitterwolf, 415 So.2d 196 (La.1982); State of Louisiana v. Hayward, 243 La. 1036, 150 So.2d 6 (1963); and State, Dept. of Trans. & Dev. v. Stephenson, 480 So.2d 909 (La.App. 2 Cir.1985).
Compensation to be awarded in expropriation suits is the market value of the property taken based on a price which would be agreed upon between a willing and informed buyer and seller, under usual and normal circumstances. State v. Hayward, supra.
The trial court stated in its written reasons:
"Having duly considered the evidence and the excellent briefs of counsel, it is my opinion that the highest and best use to which the property was adaptable at the time of the taking and in the not too far distant future as of that time, was farming. Although it is indicative that this property was classified as a wetland, the testimony convinces me that a wetlands permit, if necessary, would not be difficult to obtain by someone wishing to convert the property to agricultural use."
There is ample evidence in the record to support these findings of fact.
Dr. Lloyd F. Baehr of the U.S. Corps of Engineers, an expert witness for plaintiff on the trial of this matter, had occasion to make an inspection and determination of this property as to its status as "wetlands", *294 and, in a written memo prepared by him for such purpose, indicated the following:
"Pertinent site information was recorded concerning the apparent plant community structure, general hydrological influences, and soils makeup.
* * * * * *
Generally, the property was a wet bottomland hardwoods (WBLHW) consisting of the following vegetational species:"
After a recitation of the types of vegetation located on the subject property, Dr. Baehr continued his analysis as follows:
"Based primarily on plant community structure and supported by soils and/or hydrological information, the property which is wooded is a wetland and subject to Corps Section 404 jurisdiction. Discussions with Ms. Barbara Keeler of the U.S. Environmental Protection Agency (EPS), Dallas regional office, on 26 Nov 84, led to the EPA's concurrence (under the `special case' memorandum of understanding attachment 6) with my findings. Therefore, a U.S. Department of the Army permit would have to be obtained prior to placement of any dredged or fill material in the wetland."
The highest and best use of a piece of property involved in an expropriation suit is that use of the property most favorably employed to which the property is adaptable and may reasonably be put in the not too distant future as determined as of the time of the taking. It must be a use which would be seriously considered by a willing buyer as having a primary effect on the value of the property, without considering the effects of the project for which it is being taken.
A pronouncement on this subject is found in the case of Louisiana Resources Co. v. Noel, 499 So.2d 1016 (La.App. 3 Cir.1986), where the court defined highest and best use as follows:
"Highest and best use is the most favorable employment to which the property is adaptable and may reasonably be put in the not too distant future. See Faustina Pipe Line Co. v. Bernard, 458 So.2d 981 (La.App. 3 Cir.1984). If potential future use of the property is shown to be within the reasonably near future, then the landowners are entitled to compensation on the basis of such use even though the property is not being so utilized at the time of taking. State Department of Highways v. Rapier, 246 La. 150, 164 So.2d 280 (1964). Market demand is an important factor in determining potential use. Louisiana Resources Co. v. Langlinais, 383 So.2d 1356 (La.App. 3 Cir.1980), and Faustina Pipe Line Co. v. Bernard, supra. Other important factors include economic development in the area, specific plans of businesses and individuals, including action already taken to develop the land for that use, and the use to which the property is being put at the time of the taking. See Southwestern Electric Power Co. v. Scurlock, 485 So.2d 72 (La.App. 2 Cir.1986), and Town of Rayville v. Thomason, 404 So.2d 1290 (La.App. 2 Cir. 1981)." Louisiana Resources v. Noel, supra, at page 1019.
See also the recent case of State, Dept. of Trans. & Dev. v. Boagni, 509 So.2d 471 (La.App. 3 Cir.1987), where this court affirmed the reasoning of the Noel case.
In this case, defendants are claiming that the highest and best use of the expropriated property is first, for use as a sand pit, and, second, for use for agriculture. The main thrust of defendants' contention is that plaintiff had located and identified the sand deposit on defendants' property more than four (4) years before the property was expropriated. Defendants argue that the property was chosen by the plaintiff to locate a "scenic area" partially on the property, because excavation of the subsurface sand deposits would create an artificial lake for the "scenic area" and also allow plaintiff to obtain fill material for the construction of I-49. The evidence shows that the plaintiff, shortly before the expropriation, had a pre-bid conference with prospective bidders and that there was discussion of the sand deposit located on the property and about the size of the area which could be excavated for a borrow pit. After defendants' property was expropriated and construction of the *295 roadway undertaken, a borrow pit was excavated on the defendants' property and on adjacent property. The material removed from the borrow pit was used in the construction of the roadway.
The evidence presented at trial showed that there was no market demand for such property, either for sand pit operations or even for agricultural purposes. Plaintiff introduced evidence, by soil borings made on the property as well as by testimony of various witnesses, which showed that the sub-surface material on the expropriated property was not unique but was available on all properties located twenty miles north and south of the property. There was no scarcity in the area of the materials the defendants claim was suitable for sand pit operations. The sand on the property was mixed with mud, clay, sticks, and other debris. When this type of sand is excavated, dried, and worked it could only be used as fill dirt. Insofar as agricultural use was concerned, the tract of land involved was small, landlocked, and subject to inundation by water for most of the year. The cost to clear and prepare the land for agricultural use at the time of the taking was also too expensive to justify such use.
Plaintiff's evidence also showed there was no economic development of property in the immediate area for sand pit purposes. The same is true as well for agricultural purposes. The cost of obtaining a U.S. Corps of Engineers 404 permit to convert the property from woodland to agricultural use, if it could be obtained, would be time consuming and expensive rendering such conversion speculative. The evidence further indicated that there were no plans for the defendants or anyone in the area to convert adjacent and nearby properties to agricultural uses.
The Fakouri family had done nothing with the property in the past; they neither used it for agricultural purposes nor sand pit operations. Defendants had no accessible entry to the property and seldom visited it. They had no plans for the property and did not contemplate any plan for future use.
For these reasons we do not find that the trial court was manifestly in error or clearly wrong in finding that farming was the highest and best use for the property.
Using the determination that the highest and best use of the land was farming, the court next determined the property's value for farming use at the time of the taking. In determining the value of the property taken, the trial court may reach a conclusion which does not coincide with the testimony of any witness. State, Through Dept. of Highways v. Romano, 343 So.2d 222 (La.App. 1 Cir.1977).
The estimates given by the experts ranged from $450.00 per acre to $7,000.00 per acre, with the most-often quoted value being approximately $1,100.00 per acre. From our review of the evidence we do not find that the trial court was clearly wrong or manifestly in error in determining that the defendants' property had a value of $950.00 per acre at the time it was expropriated.

EXPERT FEES
The plaintiff complains that the trial court was manifestly in error and clearly wrong in awarding excessive expert witness fees to the defendants' appraisers. La.R.S. 13:3666 sets forth the method for compensating expert witnesses:
"Witnesses called to testify in court only to an opinion founded on special study or experience in any branch of science, or to make scientific or professional examinations, and to state the results thereof, shall receive additional compensation, to be fixed by the court, with reference to the value of time employed and the degree of learning or skill required.
B. The court shall determine the amount of the fees of said expert witnesses which are to be taxed as costs to be paid by the party cast in judgment either:
(1) from the testimony adduced upon the trial of the cause, the court shall determine the amount thereof and include same or,
*296 (2) by rule to show cause brought by the party in whose favor a judgment is rendered against the party cast in judgment for the purpose of determining the amount of the expert fees to be paid by the party cast in judgment, which rule upon being made absolute by the trial court shall form a part of the final judgment in the cause."
The assessment of witness fees was discussed in the matter of State of Louisiana, through the Department of Transportation and Development v. Jacob, 491 So.2d 138 (La.App. 3 Cir.1986) where the court stated:
"In expropriation proceedings, the condemning authority is taxed with the reasonable costs of the testifying expert witness retained by the landowner to assist him in obtaining his just compensation. State of Louisiana, through the Department of Highways v. William T. Burton Industries, Inc., 219 So.2d 837 (La.App. 3rd Cir.1969), writ refused, 254 La. 14, 222 So.2d 67 (La.1969).
The fixing of expert witness fees is largely within the sound discretion of the trial court, and the trial court's fixing thereof will not be disturbed on appeal in the absence of abuse of discretion. State of Louisiana, through the Department of Highways v. Salles, 387 So.2d 1278 (La.App. 1st Cir.1980), writ denied, 393 So.2d 744 (La.1980); State of Louisiana, Department of Transportation and Development v. Van Willet, 389 So.2d 1346 (La.App. 3rd Cir.1980).
In fixing expert witness fees, each case must turn on its own peculiar facts and circumstances. However, the jurisprudence has provided us with certain factors to consider in fixing expert witness fees. Some of the pertinent factors are the amount of time consumed by the experts in compiling their reports; the amount charged the landowner; the amount of time spent in preparing for trial; the amount of time actually spent in court; the expertise of the expert; the difficulty of the appraisal; the amount involved in the award; and, the degree to which the expert's opinion aided the court in its decision. State of Louisiana, Through the Department of Highways v. Romano, 343 So.2d 222 (La.App. 1st Cir.1977)." State, Dept. of Trans. & Dev. v. Jacob, supra, at page 142.
The experts presented bills for their services which are filed into evidence as exhibits in the record. Mr. Gene Cope explained that he spent 20 hours on various physical inspections and photographing of the property. Mr. A. Byron Gore also presented a bill for his appraisal, which detailed his inspections and appraisals of the property which spanned a period of time from 1982 to 1986. Reviewing the entire record and the bills of defendants' experts, and evaluating their bills in view of the jurisprudence, we do not find that the trial court was clearly wrong in fixing the amounts of the defendants' expert witnesses fees.
For the reasons assigned, the judgment of the trial court is affirmed. All costs of this appeal are assessed one-half to defendants-appellants and one-half to plaintiff-appellee.
AFFIRMED.
LABORDE, J., dissents and assigns written reasons.
LABORDE, Judge, dissenting.
I am not convinced that the landowners have been compensated to the full extent of their loss as required by Article 1, Section 4 of the Louisiana Constitution.
Four (4) years prior to the expropriation, the State determined that the landowners' property would be used as a sand pit to excavate materials for use in the construction of I-49 and, subsequent to the excavation, would be converted into an artificial lake and scenic area. This is exactly what happened. How the property's highest and best use became agricultural land during trial eludes me. A sand pit is a sand pit is a sand pit. The highest and best use of the property was a sand pit before, during and after the taking. The landowners should have been compensated accordingly.
I respectfully dissent.