629 So.2d 500 (1993)
TRANS LOUISIANA GAS COMPANY, Plaintiff-Appellant,
v.
Michael E. HEARD, et al., Defendants-Appellees.
No. 93-35.
Court of Appeal of Louisiana, Third Circuit.
December 8, 1993.
*501 Oscar E. Reed Jr., Lafayette, for Trans Louisiana Gas Co.
Robert Wayne Daigle, Ian Alexander Macdonald, Lafayette, for Vermilion Hills, Inc.
Before GUIDRY, STOKER, DOUCET, KNOLL and DECUIR, JJ.
KNOLL, Judge.
Trans Louisiana Gas Company (Trans La) appeals the amount of the trial court's award of damages in an expropriation proceeding.
After unsuccessful negotiations with the property owner, Trans La filed this expropriation suit on July 28, 1989, seeking to acquire approximately 8.7 acres in an area located at the intersection of the Kaliste Saloom Road Extension and Hugh Wallace Road in Lafayette. When negotiations began, Dr. Michael E. Heard owned the property. In April of 1989, Dr. Heard transferred the property to Vermilion Hills, Inc., a corporation in which Dr. Heard is the sole stockholder, director, and officer. Trans La sought permanent rights-of-way, 15 feet wide in some places and 10 feet wide in others, to accommodate 6 inch and 2 inch natural gas pipelines.
*502 On October 16, 1989, the parties entered into a consent judgment granting to Trans La the rights-of-way sought in its expropriation proceeding with a reservation of the right to try the issues of just compensation, damages, and attorney's fees at a later date.
In a judgment rendered on September 2, 1992, the trial court awarded Vermilion Hills $23,185 in servitude compensation, $9,500 in stipulated construction damages, and severance damages of $103,852 less cost to cure of $2,500 all with legal interest from the date of the taking on October 16, 1989, plus attorney's fees in the amount of $7,500, and expert witness fees totaling $7,060.
Trans La appeals the judgment of the trial court, asserting that the trial court erred in: 1) finding that the "out-parcel" had a separate highest and best use for commercial development of a gasoline/food store operation; 2) finding that John Wasson's opinion could be considered in the determination of a separate highest and best use of the out-parcel; 3) finding the opinion of value placed on the out-parcel by defendant's expert uncontradicted; 4) finding that the entire area within the out-parcel suffered severance damage; 5) awarding excessive amounts for expert witness fees; and 6) awarding attorney's fees. Vermilion Hills, Inc. (Vermilion Hills), answered the appeal, seeking to have the award of attorney's fees increased.
For reasons which follow, we affirm the judgment of the trial court.

COMPENSATION FOR EXPROPRIATED PROPERTY
Trans La's first 4 assignments of error simply attack the trial court's findings of fact, concerning valuation of the expropriated property. Our jurisprudence has firmly established that factual determinations, including those as to value of property and severance damages, as well as the weight afforded the testimony of expert witnesses, will not be disturbed on review in the absence of manifest error. State Through DOTD v. Estate of Davis, 572 So.2d 39 (La.1990). Our careful review of the record fails to disclose any manifest error in the trial court's findings.
The trial court, in written reasons for judgment, succinctly summarized the facts pertinent to the value of the expropriated property and severance damages as follows:
"Both parties employed appraisers to value the property in order to determine the amount of just compensation to be paid to the defendant. Plaintiff has employed Gene Cope as its appraiser, and defendant has employed Byron Core. Gene Cope testified that the highest and best use of this site, and the improvements thereon, is for continued recreational use. Byron Core testified that the highest and best use of the tract, excluding the out-parcel is for continued recreational purposes, but added that the highest and best use for the out-parcel is for commercial use, including the development of a gasoline/food store operation. In support of this conclusion, he recognized the enhancement occurring to this corner location resulting form the ongoing Kaliste Saloom Road Extension project which has resulted in the creation of a five lane thoroughfare from Pinhook Road to U.S. Highway 90. He also considered that the traffic count in front of the subject property would increase from about 8,000 to 9,000 automobiles per day to about 18,000 to 20,000. Cope did not utilize the `front land-rear land' approach in appraising the subject property as did Core.
John Wasson, the owner of a market research company which specializes in market research for fuel and convenience stores, testified that in the last five years he has performed over 275 marketing studies related to fuel and food mart type facilities. He has performed several market studies in the vicinity of the subject site, including one which was within a fourth of a mile and located at the corner of Kaliste Saloom Road and Highway 90. It is his opinion that this was a viable site for a `new image' fuel and convenience store. However, after the installation of the pipeline, this facility could no longer be built on this site because it would entail building the facility on the pipeline. He further testified that there were no `new image' facilities in 1989.
Tim Mader, a civil engineer and land surveyor, testified for plaintiff. For trial purposes, *503 he prepared his own proposed site for the purpose of showing the Court that it was physically possible to build a convenience store and gasoline operation on the out-parcel even after the pipeline taking (Joint Exhibit No. 2). Wasson testified that he had reviewed the site layout of Mader and stated that it was totally unacceptable from a feasibility standpoint. Wasson then concluded that he would not recommend to any client that they construct a facility on the out-parcel in accordance with the layout of Mader.
This Court finds Mr. Wasson to be a well qualified witness whose testimony was not contradicted. This Court further finds that Tim Mader was not qualified in the area of marketing research, site analysis and site layout for gasoline/food mart operations. Taking in to consideration the opinion of Wasson and Core, this Court finds that the highest and best use of the out-parcel is a convenience store and the highest and best use of the remainder of the property is for continued recreational purposes.
The case of State vs. Central Realty Investment Company, 238 La. 965, 117 So.2d 261 (1960), defines market value for purposes of compensation to be awarded in expropriation cases as the price which would be agreed upon at a voluntary sale between a willing seller and purchaser. It also states that sales of similar and comparable properties within the vicinity offer the best guide in determining the market value to which the owner is entitled. Although this Court is of the opinion that current listings are not reliable comparables in an expropriation suit, both appraisers, Cope and Core, used listing levels in arriving at their proposed values. A review of the comparable sales testified to, taken together with the values placed on the properties by the experts, leads this Court to adopt the value placed upon the subject site, excluding the out-parcel, by Core. This Court finds that this tract shall be valued at $1.50 per square foot. As to the value of the out-parcel, Core placed a value on this parcel of $5.50 per square foot. Cope, Trans La's appraiser, testified that he did not appraise the out-parcel of the subject property separate from the subject property as a whole because he did not consider the out-parcel to have a different highest and best use. He could not provide this Court with an opinion on the value of this out-parcel. Therefore, Core's opinion as to the value is uncontradicted and shall be adopted by this Court."
In both appraisers' reports, they provide that the servitude rights sought to be acquired for permanent purposes are equal to 95 percent of full fee market value of the land area over which the permanent servitude is to be imposed. They also provide a 6 percent rental for the temporary work space.
Since this Court finds that the highest and best use of the out-parcel is for a convenience store, it will adopt the portion of Mr. Core's report which provides for the description of and compensation for the servitude. The servitudes are described as follows: (1) 10' permanent servitude which includes 2193 square feet in a 20', more or less, paralleling and abutting temporary servitude, which includes 4,986 square feet, easterly of the prime corner and paralleling Hugh Wallis Road. A 2" distribution line is to be installed in the permanent servitude and will carry only local distribution pressure, some 30 p.s.i., more or less. (2) 10' permanent servitude angling across the prime corner which includes some 2,686 square feet in a 20', more or less, paralleling and abutting temporary servitude, which includes some 6,110 square feet. A 6" high pressure transmission line is to be installed in that part of the permanent servitude angling across the corner and a 2" distribution line will be installed in that part of the permanent servitude abutting Hugh Wallis Road. The 6" high pressure transmission line will carry pressures typically from 265 p.s.i. to 288 p.s.i. with a maximum of 325 p.s.i. The 2" distribution line will carry typical [sic] 30 p.s.i. more or less. (3) A 10' widening to 15' permanent servitude paralleling and abutting Kaliste Saloom Road westerly of the intervening ownership of J.W. Dupuis and a temporary servitude of some 20' *504 widening to some 40' abutting and paralleling the permanent servitude. Additionally, some 360 square feet triangular in shape, as required in the temporary servitude located at the westerly limit of the aforementioned prime commercial corner tract. The permanent servitude would include 2,047 square feet and the temporary servitude will include 7,155 square feet. A 6" high pressure transmission line is to be installed in the permanent servitude and will carry pressure of 265 p.s.i. to 288 p.s.i. with a maximum of 325 p.s.i.
Therefore, the compensation for the servitude to be awarded to defendant is as follows:
The servitude described first above include:

2193 sf permanent @ $1.50 sf × 95% $ 3,125.00
4986 sf temporary @ $1.50 sf × 6% $ 449.00

The servitude described second above include:

2686 sf permanent @ $5.50 sf × 95% $14,034.00
6110 sf temporary @ $5.50 sf × 6% $ 2,016.00

The servitude described third above include:

2047 sf permanent @ $1.50 sf × 95% $ 2,917.00
7155 sf temporary @ $1.50 sf × 6% $ 644.00
Permanent servitude $20,076.00
Temporary servitude $ 3,109.00

This Court concludes that the defendant shall be awarded a total servitude compensation of $23,185.00.
Mr. Cope, Trans La's appraiser, assigned severance damages only to the portion of the out-parcel northeast of the permanent servitude which he calculated to contain 6,359.76 square feet. It was his opinion that severance damages were not to be assigned to that portion of the out-parcel lying inside of the permanent servitude because the entirety of the subject property had a highest and best use for recreational purposes and therefore no other portion of the property would sustain damages.
However, since Cope did not find the highest and best use of the out-parcel to be for a convenience store, this Court must adopt Core's testimony. Core testified that the diagonal crossing of the pipeline over the property impacted the remainder of the out-parcel. He concluded that the diagonal crossing effectively eliminates the ability of the property owner to carve out and separately market the out-parcel for commercial usage and renders it no more valuable than the other part of the property. Since the value of the remainder of the property was found to be $1.50 per square foot, and the value of the out-parcel was $5.50 per square foot, the proper measure of severance damages shall be $4.00 per square foot for the entire area of the out-parcel less the permanent servitude area which is illustrated as follows:
25,963 square feet (28,649 sf less 2,686 sf) × $4.00 per square foot ($5.50 per square foot less $1.50 per square foot) equals $103,852.
There is no diminution in value attributable to the first or third servitude which are described above. Therefore, this Court concludes that the severance damages to be awarded defendant total $103,852.00. The defendants "cost-to-cure" which is estimated at $2,500.00 shall be deducted from the total compensation award...."
We find that the record completely supports the findings of the trial court concerning the value of the expropriated property and severance damages.
Trans La's allegation that the trial court erred in finding that the opinion of value of the out-parcel by Gene Cope was uncontradicted deserves further discussion. During trial, Byron Core testified that the highest and best use of the out-parcel was commercial, then he valued the parcel at $5.50 per square foot. Gene Cope, Trans La's expert, had not appraised the out-parcel separate from the subject property. Nevertheless, he assumed arguendo that the highest and best use of the out-parcel was commercial, then estimated a 1989 market value of $2 per square foot without elaboration or further explanation. The trial court apparently did not place much value on his unsubstantiated estimation. In light of the facts presented, we cannot say that the trial court erred in accepting Byron Core's valuation of the out-parcel over Gene Cope's unsupported estimation of value. We do not find any manifest error on the part of the trial court in its award of $23,185 as compensation for *505 the taking, $9,500 in stipulated construction damages, and $103,852 in severance damages less $2,500 for cost-to-cure, all with legal interest.

EXPERT WITNESS AND ATTORNEY'S FEES
As its fifth assignment of error, Trans La argues that the trial court awarded defendant excessive expert witness fees. In expropriation proceedings, the condemning authority is taxed with the reasonable costs of the testifying witnesses retained by the landowner to assist it in obtaining just compensation. State, D. of Transp. & Development v. Jacob, 491 So.2d 138 (La.App. 3rd Cir.1986), writ denied, 496 So.2d 331 (La. 1986). The fixing of expert witness fees is largely within the sound discretion of the trial court, and, on appeal, we may not reverse the trial court's fixing thereof absent an abuse of discretion. In fixing expert witness fees, each case must turn on its own peculiar facts and circumstances. However, the jurisprudence has provided us with factors to consider such as the amount of time consumed by the experts in compiling their reports; the amount charged the landowner; the amount of time spent in preparing for trial; the amount of time actually spent in court; the expertise of the expert; the difficulty of the appraisal; the amount involved in the award; and the degree to which the expert's opinion aided the court in its decision.
In the case sub judice, the parties stipulated that Trans La is obligated to pay court costs in this proceeding. Byron Core submitted a bill of $5,750. The invoice indicated that, he inspected and reinspected that subject site, researched and inspected comparable properties, analyzed zoning ordinances, building codes, feasibility studies, and property elevations, and attended several depositions and conferences in connection with this litigation. Furthermore, his opinion greatly aided the trial court in its determination of compensation and severance damages. In light of the evidence presented, we find no error in the trial court's award of $5,750 to Byron Core. Likewise, we find no error in the trial court's award of $1,310 to John Wasson in light of his participation in this litigation and for his expert market analysis employed for evaluating the feasibility of developing the site as a gas/food facility.
Trans La contends that the trial court erred in awarding $7,500 in attorney's fees. It argues that as a prerequisite to the award of attorney's fees it was incumbent upon Vermilion Hills to enter evidence into the record of the highest amount of compensation it offered Vermilion Hills prior to the trial.
Vermilion Hills answered the appeal, asking us to increase attorney's fees and to award a sum equal to 25% of the difference between Trans La's highest pre-trial offer of compensation and the amount of compensation the trial court awarded. As an ancillary to Vermilion Hill's argument, it asks us to remand the case to the trial court so that it may enter into evidence the amount of Trans La's pre-trial compensation offer.
LSA-R.S. 19:8(A) permits the court to award defendant landowners reasonable attorney fees if the highest amount offered by the expropriating authority is less than the compensation awarded. LSA-R.S. 19:8(A) provides in pertinent part:
"Immediately after compensation has been determined, the plaintiff shall, upon motion of the defendant, present evidence as to the highest amount it offered the defendant for the property prior to trial on the merits. After hearing evidence on the issue, the court shall determine the highest amount offered. If the highest amount offered is less than the compensation awarded, the court may award reasonable attorney fees."
The trial court and all parties agree that the record is void of evidence of the highest offer Trans La made to Vermilion Hills prior to trial. In its assessment of this issue, the learned trial court stated in its written reasons:
"Plaintiff [Trans La] has stipulated that it is obligated to pay Court costs in this proceeding, a stipulation that amounts to an admission that the price offered by the plaintiff was less than the actual value of the property.

*506 Since there was no evidence offered, this Court relied upon the efforts of the attorneys as reflected by the record to set attorneys fees. Defendant is entitled to reasonable attorney's fees in the amount of $7,500.00 in accordance with La.R.S. 19:8(A)."
We disagree with Trans La's argument that evidence of its pre-trial offer of compensation was a prerequisite to the trial court's award of attorney's fees. A similar argument was made and rejected in Claiborne Elec. Cooperative, Inc. v. Garrett, 357 So.2d 1251 (La.App. 2nd Cir.1978), writ denied, 359 So.2d 1306 (La.1978). In Claiborne Elec., the Second Circuit stated at page 1258:
"Defendants in these consolidated cases petitioned for reasonable attorney fees; they did not request a jury trial on issues of compensation. The district judge, who sat as trier of all the issues, was aware of the disparity between the amount offered by plaintiff and the compensation awarded; trial of a contradictory motion on this issue would be a useless exercise under the circumstances presented here.
We hold defendant landowners are entitled to reasonable attorney fees in any case in which the highest amount offered is less than that obtained through the landowners' judicial assertion of their rights. This interpretation of the statute does not do violence to its language."
As in Claiborne Elec., Vermilion Hills petitioned for reasonable attorney's fees and proceeded before a judge rather than a jury. From the trial court's written reasons, it is clear that the trial judge was aware that a disparity existed between the amount Trans La offered and the compensation ultimately awarded. On this basis, we find that the trial court was justified in awarding attorney's fees.
We now turn to Vermilion Hill's request to increase the award of attorney's fees to a sum equal to 25% of the difference between Trans La's highest pre-trial offer of compensation and the amount the trial court awarded.
Initially, we note that LSA-R.S. 19:8 authorizes the award of reasonable attorney's fees, not a specific percentage based on the compensation awarded. Louisiana Resources Co. v. Noel, 499 So.2d 1016 (La.App. 3rd Cir.1986). In light of the protracted litigation and successful efforts of Vermilion Hills in obtaining the desired compensation, we find the trial court's award of $7,500 attorney's fees reasonable and well supported by the record.
Furthermore, we find that there is no evidentiary basis on which to assess the percentage requested since Vermilion Hills failed to enter into evidence Trans La's highest pre-trial offer of compensation. In making this last determination, we do not find it appropriate, as advanced by Vermilion Hills, to order a remand to take additional evidence on Trans La's pre-trial compensation offer. This evidence was available at trial and was simply not tendered by Vermilion Hills for consideration by the trial court. As determined hereinabove, the trial court was able to assess attorney's fees on its appreciation of the amount of legal work Vermilion Hills performed in achieving a higher compensation award.
For the above and foregoing reasons, the judgment of the trial court is affirmed. Costs of this appeal are taxed to plaintiff, Trans Louisiana Gas Company.
AFFIRMED.
DOUCET, J., dissents and assigns reasons.
DECUIR, J., dissents for the reasons assigned by DOUCET, J.
DOUCET, Judge, dissenting.
I respectfully dissent from the majority's opinion herein. I would reverse the trial court's determination that the highest and best use of the out-parcel located at the corner of Kaliste Saloom and Hugh Wallis Roads was as a site for a "new image" fuel and convenience store as of the time of the taking. There is nothing in the record to support this conclusion by the trial judge.
The amount of damages owed to a landowner in an expropriation is to be determined as of the date of the taking, in this case July 28, 1989. At trial, the landowner's experts testified that the highest and best use of the property was as a convenience store. However, a reading of their testimony *507 indicates that they used hindsight to apply 1992 business and economic conditions to a taking which occurred in 1989. They ignored the economic realities of 1989, a time when today's economic upswing was unforeseen, when a convenience store could not be expected to succeed at that location, and when "new image" facilities did not exist. As a result they arrived at a highest and best use as of the date of trial rather than for 1989.
The record reflects that the out-parcel had been in use as part of a larger recreational parcel for some time before the taking. It was, in 1989, located on a quiet, two-lane street which was not heavily trafficked, in an area which was not easily accessible to a sufficient number of households to make a convenience store either desirable or potentially successful. The only conclusion which can be supported by the record is that in 1989, the highest and best use of the out-parcel was as a part of the larger recreational parcel.
Therefore, the trial court was manifestly erroneous in its conclusion that the highest and best use of the out-parcel was as a site for a convenience store.