# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT


## 03-1450


**KEN SMITH d/b/a B & K MUSIC**

**VERSUS**

**STATE OF LOUISIANA, DEPARTMENT OF
TRANSPORTATION & DEVELOPMENT**


* * * * * * *
APPEAL FROM THE
THIRTY-THIRD JUDICIAL DISTRICT COURT
PARISH OF ALLEN, DOCKET NO. C-99-671
HONORABLE JOEL G . DAVIS, PRESIDING

* * * * * * *
**SYLVIA R. COOKS
JUDGE**
* * * * * * *

Court composed of Sylvia R. Cooks, Marc T. Amy and Elizabeth A. Pickett, Judges.


**AFFIRMED, AS AMENDED.**

Rick J. Norman
Woodley, Williams, Boudreau, Norman, Brown & Doyle, L.L.C.
P.O. Box 3731
Lake Charles, LA 70602
Telephone:  (337) 433-6328
COUNSEL FOR PLAINTIFF-APPELLEE:
        Ken Smith

Ronald J. Bertrand
P.O. Box 5
Rayne, LA 70578-0005
Telephone:    (337) 334-2139
COUNSEL FOR DEFENDANT/APPELLANT:
        State of Louisiana, DOTD

**COOKS, Judge.**

This appeal arose from Ken Smith's compensation claim against the State of Louisiana, Department of Transportation & Development (hereafter DOTD) for the inverse condemnation of his business location.

Ken Smith owned B & K Music in Kinder, Louisiana, which was located at the intersection of Highway 165 and Highway 190. The Town of Kinder owned the land where the building was located. Mike Unkel leased the land from the Town for $400.00 per year, and had been doing so for approximately forty years. Unkel owned the building located on the property and subleased the property and building to Smith for $200.00 per month. This arrangement had been ongoing for nearly twenty years. The lease between Unkel and Smith provided Smith could lease the property for as long as he desired.

With the opening of the Grand Casino Coushatta nearby, traffic on Hwy. 165 substantially increased. The State determined Hwy. 165 needed widening. To accomplish this end, the State deemed it necessary to expropriate the land where B & K Music was located.

DOTD's appraiser valued the building on the site at $34,500.00. The building had been appraised years earlier at $24,000.00. Despite the amount of its appraisal, DOTD offered Unkel $208,000 for the building. Smith received an eligibility letter from DOTD, notifying him that he might be eligible for an award because of the expropriation. Smith was informed by DOTD he would have to move from the land in 90 days. Attempts by Smith and DOTD to find another location on Hwy. 165 were unsuccessful. Eventually, he was forced to renovate and move into a building he owned, located well off of Hwy. 165.

As a tenant, Smith was then entitled to seek moving expenses, the expenses of reestablishing his business, reimbursement for improvements, loss of leasehold advantage and loss of business attributable to a new location.

According to Smith, when the DOTD mistakenly agreed to pay Unkel $208,000 for the building, it then "attempted to mitigate its damages by insisting that Smith get his just compensation from Unkel." Unkel refused. Smith argued DOTD then devised a plan where "in an attempt to avoid paying Smith any compensation, the DOTD would ignore its own regulations and would stonewall Smith. Unkel, in turn, would attempt to evict Smith. If Unkel were successful, the DOTD would take the position that Smith, as a former tenant, was not entitled to any compensation."

Smith filed a lawsuit in November 1999 against DOTD. There were disputes as to DOTD's compliance with producing all required documents to Smith. Although the trial court found DOTD did not "fully and accurately respond to plaintiff's discovery requests" and "said failure to produce directly affected plaintiff's ability to present its case and/or to cross-examine DOTD's witnesses," the trial court could not determine whether the failure was "an act of omission or commission by DOTD." Thus, the trial court did not sanction DOTD as requested by plaintiff.

The jury found DOTD did "take or damage Ken Smith's property or business without compensating him fully for his loss," and awarded Smith $15,260.00, which consisted of $10,000.00 for cost of relocation, $4,760.00 for moving expenses, and $500.00 for loss of improvements. The jury did not make awards for loss of leasehold advantage, loss of business, or loss of opportunity. Smith filed a Motion for Judgment Notwithstanding the Verdict (JNOV) because of the jury's failure to make those awards.

The trial judge denied the JNOV with respect to the loss of business and loss of opportunity arguments. However, finding the "evidence and the reasonable inferences point so strongly in favor of plaintiff on the issue of leasehold advantage that reasonable persons could not arrive at a contrary verdict," the trial court granted that portion of the JNOV. Both DOTD's and Smith's experts established the

leasehold advantage (which was defined as the difference between the contract rent less the market rent) was $1,000.00 per month. While defendant's expert testified that the lack of a specific term of lease made it impracticable to value the future leasehold advantage, Smith's expert testified the leasehold advantage for five years was $56,027.00 and $100,647.00 for ten years. Accordingly, the trial court awarded Smith $100,647.00 for leasehold advantage. A judgment was prepared reflecting the jury's verdict plus the JNOV. The judgment also awarded Smith $78,428.00 in attorney fees, $12,742.75 in expert witness fees and $5,290.64 in expenses.

DOTD appealed the trial court's judgment, arguing the JNOV awarding $100,647.00 for leasehold advantage was improperly granted and the trial court's award of $78,428.00 in attorney fees was an abuse of discretion. Smith answered the appeal and argued the jury and trial court erred in not awarding damages for loss of business, loss of opportunity and inconvenience. He also alleged the trial court erred in failing to sanction DOTD for failure to produce requested documents. Lastly, Smith requested attorney fees for the work necessitated by this appeal.

## ANALYSIS

We note the jury's decision that DOTD took Ken Smith's property without fully compensating him is not at issue in this appeal. The parties are disputing the damage and attorney fee award conclusions made by the jury and trial judge.

### I.  *The Motion for JNOV.*

The trial court granted Smith's Motion for JNOV in part, awarding $100,647.00 for leasehold advantage, and denied it in part, refusing to award Smith damages for loss of business and loss of opportunity. DOTD contends the trial court erred in granting the JNOV on the issue of leasehold damages and Smith asserts the trial court and jury erred in not making awards for loss of business and loss of opportunity.

La.Code Civ.P. Article 1811 establishes the authority for a JNOV. It provides

that a JNOV may be granted on the issue of liability or on the issue of damages or on both. The Louisiana Supreme Court in *Davis v. Wal-Mart Stores, Inc.*, 00-445 pp. 4-5 (La.11/28/00), 774 So.2d 84, 89, discussed the standard to be used in determining whether a JNOV has been properly granted:

> A JNOV is warranted when the facts and inferences point so strongly and overwhelmingly in favor of one party that the court believes that reasonable jurors could not arrive at a contrary verdict. The motion should be granted only when the evidence points so strongly in favor of the moving party that reasonable men could not reach different conclusions, not merely when there is a preponderance of evidence for the mover. If there is evidence opposed to the motion which is of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motion should be denied. In making this determination, the court should not evaluate the credibility of the witnesses and all reasonable inferences or factual questions should be resolved in favor of the non-moving party.

> The standard of review for a JNOV on appeal is a two part inquiry. In reviewing a JNOV, the appellate court must first determine if the trial court erred in granting the JNOV. This is done by using the aforementioned criteria just as the trial judge does in deciding whether or not to grant the motion. After determining that the trial court correctly applied its standard of review as to the jury verdict, the appellate court reviews the JNOV using the manifest error standard of review.

(Citations Omitted).

The trial court granted the JNOV with respect to the issue of leasehold advantage finding the evidence pointed so strongly in favor of Smith on this issue that reasonable men could not reach a different conclusion. After reviewing the record, we agree. The testimony at trial was without dispute that Smith possessed a leasehold advantage over the subject property. Both Smith and DOTD's expert testified there was a leasehold advantage of $1,000.00 per month. There was also uncontradicted testimony that the ongoing lease of the building by Smith from Unkel was in effect a lifetime lease. The only testimony that mitigated against awarding Smith damages for a leasehold advantage was DOTD's expert statement that any amount Smith spent on repairing/renovating the location would reduce the amount of the leasehold

-4-

advantage. The trial court noted in his reasons for judgment that "the only way that the leasehold advantage could have no value, would have been for the jury to have believed that the cost of repair/renovation would have equaled or exceeded the value of the leasehold advantage." There was no testimony presented at trial to infer that significant repair or renovations were anticipated or necessary. Therefore, we find no error in the trial court's grant of the JNOV on the issue of leasehold advantage.

Smith argues the trial court erred in not granting the JNOV on the issues of loss of business and loss of opportunity. We find the trial court's written reasons accurately set forth a valid basis for denying awards for loss of business and opportunity and we adopt them as our own:

**Loss of Business:**

Evidence at trial showed that following the relocation of plaintiff's business, sales actually increased. While plaintiff attempted to discredit the testimony, for purposes of the instant motion, the Court is required to view the evidence in a light most favorable to DOTD.

Accordingly, considering this evidence in a light most favorable to DOTD, the Court finds that the Motion for JNOV, as it pertains to "Loss of Business", has no merit.

Accordingly, the motion for JNOV, as it related to the issue of "Loss of Business", must be denied.

**Loss of Opportunity:**

Evidence at trial regarding loss of opportunity was limited and speculative. The jury chose to disregard it and made no award for "Loss of Opportunity".

Considering this evidence in a light most favorable to DOTD, the Court finds that the Motion for JNOV, as it pertains to "Loss of Opportunity", has no merit.

Accordingly, the motion for JNOV, as it related to the issue of "Loss of Opportunity", must be denied.

## II.  *Damages for Inconvenience and Value of Improvements.*

Smith argues the jury erred in not awarding damages for inconvenience.

Initially, we note Smith in his Motion for JNOV contended "the jury failed to award any damages for leasehold advantage, loss of business or loss of opportunity, all of which were proved at trial." No request was made in Smith's JNOV motion for damages for inconvenience. Although this failure does not prevent Smith from asserting on appeal that the jury erred in not awarding damages for inconvenience, our review of the record does not reveal the jury manifestly erred in not awarding such damages.

Smith also alleges he lost the value of his improvements when DOTD purchased them from Unkel. He notes in brief "[i]t is assumed the jury failed to award Smith the value of his improvements because the trial court informed the jury that Smith had pending a separate suit for the improvements pending against Unkel." DOTD has attached a judgment from Smith's suit against Unkel which awarded him $38,384.12 in damages for the value of his improvements. Therefore, we decline to award Smith any further damages on this issue.

## III.    *Expert Witness Fees and Litigation Expenses.*

The trial court's judgment awarded $12,742.75 in expert witness fees and $5,290.64 in litigation expenses. DOTD argued below that Smith did not include a request for expert witness fees in its motion to set attorney fees. The trial court found DOTD did not object to the issue being addressed during the hearing on the motion, and found the pleadings were thus expanded to properly place that issue before the court. We agree. DOTD contends the issue of expert witness fees never arose at the hearing, but our review of the record indicates counsel for Smith discussed the fact that his firm contracted directly with the experts in question and paid them directly for their services.

DOTD also argues the expert witness fees in question should not be awarded

because the jury "totally rejected" the opinions of Smith's experts. The trial court found the opinions of the experts were necessary in support of Smith's case and found the fees requested were reasonable. We note that Smith was successful in obtaining a verdict from the jury finding DOTD wrongfully took his property without just compensation and a corresponding award for damages which was subsequently increased with the JNOV. Therefore, considering the trial court's great discretion in fixing expert witness fees we will not disturb the award. See Este' v. State Farm Ins. Cas., 96-99 (La.App. 3 Cir. 7/10/96), 676 So.2d 850; Trans Louisiana Gas Co. v. Heard, 629 So.2d 500 (La.App. 3 Cir.1993). We also find no abuse of discretion in the trial court's award of $5,290.64 in litigation expenses. While DOTD argues these expenses are duplicative and "should already be taxed as costs of court," it does not confirm whether the expenses were in fact so taxed or otherwise identify in the record where the duplication occurred.

## IV.    *Attorney Fee Award.*

DOTD argues the trial court erred in rendering an attorney fee award ($78,428.00) that is in excess of one-third of the amount awarded by the jury. Accordingly, DOTD asserts the award for attorney fees should have been at the most, $5,086.67, which is one-third of the jury's $15,260.00 damage award. Initially, we note this amount does not reflect the additional $100,647.00 awarded to Smith for leasehold advantage in the JNOV.

La.R.S. 13:511(A), which was applied by the trial court, controls the issue of attorney fees in inverse condemnation cases. *Rivet v. State, DOTD*, 01-961 (La. 11/28/01), 800 So.2d 877. La.R.S. 13:5111(A) provides as follows:

> A.  A court of Louisiana rendering a judgment for the plaintiff, in a proceeding brought against the state of Louisiana, a parish, or municipality or other political subdivision or an agency of any of them, for compensation for the taking of property by the defendant, other than

through an expropriation proceeding, shall determine and award to the plaintiff, as a part of the costs of court, **such sum as will, in the opinion of the court, compensate for reasonable attorney fees actually incurred because of such proceeding**. Any settlement of such claim, not reduced to judgment, **shall include such reasonable attorney, engineering, and appraisal fees as are actually incurred because of such proceeding**. Actions for compensation for property taken by the state, a parish, municipality, or other political subdivision or any one of their respective agencies shall prescribe three years from the date of such taking. [Emphasis added].

DOTD argues the fees were not *actually* incurred because if Smith did not prevail in his lawsuit, he would not have been liable for legal fees. However, Smith did prevail and an award of attorney fees is mandatory. The contract between Smith and his counsel provided, in part, that the "Attorney is to receive as compensation for his services an amount equal to the greater of (33 1/3%) of the total award (net, after expenses) collected **or the attorney fees awarded by the court**, and collected, if any." (Emphasis added.) Under La.R.S. 13:5111(A), the amount awarded by the trial court must be reasonable.

In *State, DOTD v. Williamson*, 597 So.2d 439, 441-42 (La.1992) the Louisiana Supreme Court set forth the factors to be considered in reviewing an award of attorney fees:

> Courts may inquire as to the reasonableness of attorney fees as part of their prevailing, inherent authority to regulate the practice of law . . . . Factors to be taken into consideration in determining the reasonableness of attorney fees include: (1) the ultimate result obtained; (2) the responsibility incurred; (3) the importance of the litigation; (4) amount of money involved; (5) extent and character of the work performed; (6) legal knowledge, attainment, and skill of the attorneys; (7) number of appearances made; (8) intricacies of the facts involved; (9) diligence and skill of counsel; and (10) the court's own knowledge.

In his Ruling on Plaintiff's Motion to Set Attorney's Fees, the trial court applied the *Williamson* factors to the facts of this case, and concluded:

1.   The plaintiff prevailed in his claim for damages for inverse condemnation of his business location.

2.      Even though plaintiff and plaintiff's counsel entered into a contingency fee agreement, the relevant language of the agreement fixes the attorney's fees owed by plaintiff to plaintiff's counsel as those "attorney fees awarded by the court."

3.      The responsibility incurred by the attorney was substantial. The contingency fee agreement underscores this assumed responsibility.

4.      The importance of the litigation to the client was extraordinary. Indeed, the object of the taking was an irreplaceable business location.

5.      The issues involved in this inverse condemnation action appear to have been more involved than those of an "ordinary" inverse condemnation action (i.e. the alleged conspiracy between DOTD and Mike Unkel, issues relative to the purported overpayment made to Mr. Unkel by DOTD, issues relative to ownership of leasehold improvements, issues concerning the leases and the history of the dealing between lessors and lessees, and issues related to leasehold advantage).

6.      The attorneys for plaintiff and defendant were quite knowledgeable about the issues involved in this matter.

7.      The attorneys for plaintiff and defendant were exceedingly well-prepared and skillfully presented their respective client's cases to the jury.

8.      The claimed number of hours expended by plaintiff's counsel appear to be reasonable.

9.      The hourly rate charged by plaintiff's counsel for his time, his associate's time, and administrative time are reasonable.

Based on his findings, the trial court found the $78,428.00 in attorney fees requested by plaintiff's counsel was reasonable. The trier of fact has great discretion in awarding attorney fees and such an award will not be disturbed absent manifest error. *Picard v. Vermilion Parish School Bd.*, 00-1222 (La.App. 3 Cir. 4/4/01), 783 So.2d 590, *writ denied*, 01-1346 (La. 6/22/01), 794 So.2d 794; *Poirrier v. Otis Eng'g Corp.*, 602 So.2d 207 (La.App. 3 Cir.1992); *Gravolet v. Board of Com'rs for Grand Prairie Levee Dist.*, 95-2477 (La.App. 4 Cir. 6/12/96), 676 So.2d 199. We also note, in *Louisiana Resources Co. v. Noel*, 499 So.2d 1016 (La.App. 3 Cir. 1986), this court found La.R.S. 19:8 (which gives the trial court the authority to grant attorney fees in expropriation cases) authorizes the award of reasonable attorney fees and not a

specific percentage based on the compensation awarded. We further noted the legislature chose not to put a ceiling on attorney fees in such cases, other than that they be reasonable. As Smith notes, if there is no ceiling on attorney fees in an expropriation case brought by the public body, there likewise should be no ceiling when the public body does not follow its own rules and necessitates a public citizen to file an inverse condemnation suit. Accordingly, we will not disturb the trial court's award of attorney fees.

### IV. Trial Court's Denial of Motion for Sanctions Against DOTD.

Smith contends the trial court erred in not imposing sanctions based on DOTD's failure to produce all relevant documents.

Immediately after suit was filed, Smith served DOTD with a request for production of all documents "of any nature involving in any way the building owned by Mike Unkel and leased by Ken Smith." DOTD produced certain documents, and refused to produce others based on La.Code Civ.P. art. 1424, which exempts from production documents prepared "in anticipation of litigation." Smith then filed a Motion to Compel the documents DOTD would not produce. The trial court performed an *in camera* inspection, after which it ordered DOTD to produce certain appraisal reports it withheld.

Days before trial, plaintiffs filed another Motion to Compel, seeking production of DOTD's "Just Compensation Letter," delivered to Unkel, and a "Summary Statement" which included the identification of improvements made by Smith. DOTD contends it voluntarily complied with the second Motion to Compel and forwarded the requested documents to Smith.

On the second day of trial, a witness for DOTD made reference to an appraisal review sheet, which it turns out was never forwarded to Smith. The trial court immediately issued an *instanter* order for the production of the appraisal review sheet.

Smith argues months after trial, it finally received a "smoking gun" memorandum dated March 10, 1999, which directly contradicted DOTD testimony at trial. The memorandum, sent to DOTD's appraiser, stated as follows:

> I understand that Unkel is in the process of evicting Smith - Should we hold we (sic) & pay everything to Unkel[?]

Smith argues had he been provided this memo in advance of trial, he could have discredited DOTD's testimony that it did not delay in furtherance of a conspiracy.

Although the trial court found DOTD did not "fully and accurately respond to plaintiff's discovery requests" and "said failure to produce directly affected plaintiff's ability to present its case and/or to cross-examine DOTD's witnesses," the trial court could not determine whether the failure was "an act of omission or commission by DOTD." Thus, it did not impose sanctions against DOTD.

It is well settled that a trial court has much discretion in selecting appropriate sanctions for failure to comply with discovery orders, and its decision will not be disturbed absent an abuse of that discretion. *See* La.Code Civ.P. art. 1471; *LeJeune v. Lafayette Tower Service*, 94-1240 (La.App. 3 Cir. 4/5/95), 653 So.2d 112; *Payne v. Green*, 2000-1655 (La.App. 4 Cir. 8/30/00), 769 So.2d 650. It should be noted during trial, counsel for Smith reserved his right to pursue sanctions against DOTD after the trial. He also indicated to the trial court that he did not want a mistrial, because he felt it would be contrary to his client's interests. Counsel for Smith also opposed DOTD's request to continue the trial date, although it would have provided additional time for discovery. In regard to the "smoking gun" memo, the trial court apparently did not find its non-disclosure warranted sanctions. Considering, the jury came to the conclusion that DOTD took Ken Smith's property improperly, we cannot say the trial court abused its discretion in refusing to sanction DOTD.

*V.    Additional Attorney Fees.*

In its answer, Smith requests additional attorney fees be awarded for prosecuting this matter through appeal.   Counsel for Smith states he has spent numerous hours and paid $1,101.95 in expenses since trial, which includes briefing and hearings on sanctions, attorney fees, JNOV and appeal.   We will award $10,000.00 in additional attorney fees for the work performed post-trial.

## DECREE

For the foregoing reasons, the judgment of the trial court is affirmed.   The judgment is amended to award Ken Smith an additional $10,000.00 in attorney fees for the work performed post-trial.   All costs of this appeal are assessed against defendant-appellant, DOTD.

**AFFIRMED, AS AMENDED.**